JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 SEP -9  PM 2: 48
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
       DEPUTY

| | |
|---|---|
| **BRANDON CALLIER,** | § § § |
| Plaintiff, | § § |
| v. | § § |
| **BLUEGRASS LENDING GROUP, INC.,** a Kentucky Corporation, and **THADDEUS HUNTER** | § § § § § |
| Defendants. | § § § |

EP22CV0317

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant BLUEGRASS LENDING GROUP, INC. ("Bluegrass") is a corporation organized and existing under the laws of Kentucky with a principal office at 13102 East Point Park Blvd., Suite 100, Louisville, KY 40223 and can be served via registered agent Thaddeus Hunter Voss, 244 Biscayne Boulevard, Apartment 1803, Miami, Florida 33132.

3. Defendant THADDEUS HUNTER VOSS ("Voss") is a natural person, principal officer of Bluegrass Lending Group, Inc and can be served at 244 Biscayne Boulevard, Apt 1803, Miami, Florida 33132.

### JURISDICTION AND VENUE

4. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's

1

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' tele market in robocalls to Plaintiff; adds little complexity to the case.

5.  Personal Jurisdiction. This Court has general personal jurisdiction over the defendants because they have repeatedly placed calls and automated text messages to Texas residents, derive revenue from Texas businesses, and they sell goods and services to Texas residents, including the Plaintiff.

6.  Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single automated text message from Defendant Bluegrass that is the subject matter of this lawsuit.

7.  This Court has venue over the defendants because the automated text messages at issue were sent by or on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

8.  In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

21. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

22. One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

23. An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

24. The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

25. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

26. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

27. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

28. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

29. Plaintiff has been on the National Do-Not-Call Registry since December 2007.

30. Plaintiff received at least fourteen (14) unauthorized automated text messages ("the text messages") to his personal cell phone (915) 383-4604 beginning May 19, 2022, to May 30, 2022, from Defendant Bluegrass soliciting their goods and services. *See "Exhibit A."*

31. Defendant Bluegrass is a loan broker and offers merchant cash advances, small business loans, SBA loans, equipment financing, factoring purchase order financing, lines of credit, and commercial mortgages nationwide including Texas.

32. Plaintiff unknowingly had his information sold by lead generators to companies specializing in predatory merchant cash advances with interest rates often exceeding 40 percent.

33. Plaintiff has been besieged with more than 1,000 phone calls from merchant cash advance companies soliciting Plaintiff their high-interest loans

34. Plaintiff and Defendant Bluegrass do not have any prior existing business relationships. Plaintiff has never been a customer or client of Defendant Bluegrass.

35. Plaintiff did not give Defendant Bluegrass his prior express written consent to receive the text messages.

36. The text messages Plaintiff received from Defendant Bluegrass were generated and sent using an ATDS.

37. The text messages sent by Plaintiff say "Reply Stop to opt-out" indicating an automated machine or computer will process any opt-out requests.

38. On March 7, 2022, Plaintiff received an anonymous automated text message that did not identify the sender by name, and asked Plaintiff to "Reply Yes for more information."

39. On March 7, 2022, Plaintiff replied "yes" to the text message in paragraph 38 in order to determine who was sending Plaintiff automated anonymous text messages.

40. Plaintiff's reply of "yes" in paragraph 38 was not consent to receive automated text messages as the "yes" was for information and not for information delivered via automated means. Additionally, Plaintiff cannot give anonymous consent for contact and Defendants did not identify themselves in the text message.

41. Plaintiff continued to receive text messages from Defendants.

42. On May 3, 2022, Plaintiff sent Defendants an opt out messages saying "Stop" in order to ger the messages to stop.

43. Defendants continued to text Plaintiff despite his "Stop" request.

44. Plaintiff called phone number 859-470-3279 on September 7, 2022, in order to check whether the phone number from where the phone calls originated was a working number. The phone call Plaintiff placed did not connect because phone number 859-4701-3279 is a spoofed phone number that was sent via an automated texting system.

45. The text messages sent to Plaintiff do not identify Defendant by their proper name, came

from a non-working telephone number, and do not contain any information that would allow a consumer to ascertain the identity of the text originator.

46. Defendant Bluegrass's texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.

47. The text messages Plaintiff received from Defendant Bluegrass have caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition, to wear and tear on his phone, interference with the use of his phone, and consumption of battery life.

48. Defendant Bluegrass knowingly and willfully authorizes the sending of automated text messages to millions of consumers' personal cell phones *en masse* soliciting their goods and services.

49. Defendant Bluegrass knowingly and willfully violate the TCPA because when businesses get approved for their goods and services it benefits Defendant Bluegrass financially.

50. Table below displays the solicitation text messages made to Plaintiff by Defendant Bluegrass:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 03/07/2022 | 12:53 PM | 502-317-0661 | Anonymous Text later determined to by BLG |
| 2. | 03/23/2022 | 4:55 PM | 502-317-0661 | Anthony from BLG |

| 3.  | 04/12/2022 | 1:52 PM  | 502-317-0661 | Anthony from BLG       |
|-----|------------|----------|--------------|------------------------|
| 4.  | 05/03/2022 | 3:40 PM  | 502-317-0661 | Anonymous text         |
| 5.  | 5/11/2022  | 12:06 PM | 859-470-3279 | Text from BLG          |
| 6.  | 05/19/2022 | 8:36 AM  | 859-470-3279 | Text from Josh at BLG  |
| 7.  | 05/24/2022 | 8:39 AM  | 859-470-3279 | Text from Josh at BLG  |
| 8.  | 05/26/2022 | 9:23 AM  | 859-470-3279 | Text from Josh at BLG  |
| 9.  | 05/30/2022 | 5:42 PM  | 859-470-3279 | Text from Josh at BLG  |
| 10. | 6/1/2022   | 9:46 AM  | 859-470-3279 | Text from Josh at BLG  |
| 11. | 6/7/2022   | 2:45 PM  | 859-470-3279 | Text from BLG          |
| 12. | 6/13/2022  | 2:22 PM  | 859-470-3279 | Text from BLG          |
| 13. | 6/23/2022  | 3:17 PM  | 859-470-3279 | Text from BLG          |
| 14. | 08/18/2022 | 5:23 PM  | 502-236-1461 | Spencer at BLG         |

51. The text messages Plaintiff received from Defendant Bluegrass were placed while knowingly ignoring the national do-not-call registry. The text messages were placed without training their agents/employees on the use of an internal do-not-call policy.

52. Plaintiff sent a request for Defendant Bluegrass's internal do not call policy on July 26, 2022, to submissions@bgcapg.com which is an email listed on the website they own and control https://bluegrasslending.com.

53. Defendants failed and/or refused to send Plaintiff a copy of any internal do not call policy.

54. No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards. 47 C.F.R 64.1200(d).

55. *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list. 47. C.F.R. 64.1200(d)(1).

56. On information and belief, Defendant Bluegrass did not have a written do-not-call policy while they were sending Plaintiff the text messages.

57. No emergency necessitated none of the alleged illegal automated text messages.

58. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

59. Defendant's automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

60. Defendant's automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

61. Defendant's automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

62. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone

## PERSONAL LIABILITY OF DEFENDANTS NAIK AND THOMPSON

63. Defendant Naik personally participated in the phone calls at issue in this Complaint. Naik authorized the payments to and from Defendants FES and United Wealth's bank accounts.

64. Defendant Naik paid the telemarketing bills using his personal credit card.

65. Defendant Naik at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

66. Defendant Thompson personally participated in the phone calls at issue in this Complaint. Naik authorized the payments to and from Defendant United Wealth's bank accounts.

67. Defendant Thompson paid the telemarketing bills using his personal credit card.

68. Defendant Thompson at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

69.     Defendant Kim refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Kim financially.

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)
>
> The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)
>
> Quoting Texas v. American Blastfax:
>
> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell

> corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

70. The Same Court held that corporate officers were also personally liable for DTPA violations

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

### Plaintiff's cell phone is a residential number

71. The text messages were to Plaintiff's cellular phone (915) 383-4604 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on

cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

72. The actions of Defendant violated the Texas Business and Commerce Code 305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The automated text messages by Defendant violated Texas law by placing automated text messages to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

73. The text messages by Defendant violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent
### (Against All Defendants)

74. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75. Defendant Bluegrass and/or their agents placed automated text messages to Plaintiff's cellular telephone.

76. Plaintiff never consented to receive automated text messages from Defendant. Plaintiff has had no relationship with Defendant.

77. Defendant's automated text messages were made for purposes of advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

78. The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

79. As a result of their unlawful conduct, Defendant Bluegrass repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant Bluegrass to stop their unlawful text message campaigns.

80. Not only did Defendant Bluegrass make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

81. If the Court finds that Defendant Bluegrass willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

82. Plaintiff incorporates the foregoing allegations as if fully set forth herein

83. The foregoing acts and omissions of Defendant BLUEGRASS and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

84. Defendant Bluegrass sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

85. Plaintiff was statutorily damaged at least fourteen (14) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the automated text messages described above, in the amount of $500 per automated text message.

86. Plaintiff is entitled to an award of at least $500 in damages for each such violation . 47 U.S.C. § 227(c)(5)(B).

87. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
## Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

88. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

89. The foregoing acts and omissions of Defendant Bluegrass and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

  b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

  c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

90. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

91. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### Violations of The Texas Business and Commerce Code 305.053

92. Plaintiff incorporates the foregoing allegations as if set forth herein.

93. The foregoing acts and omissions of Defendant BLUEGRASS and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing automated text messages to Mr. Callier cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

94. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

95. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendant jointly and severally as follows:

A.   Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.   A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.   An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $1500 per automated text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations and individuals for 9 automated text messages.

E.   An award of $1500 per automated text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations and individuals for 9 automated text messages.

F.   An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053.

G.   An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

H.   An award to Mr. Callier of damages, as allowed by law under the TCPA;

I.   An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity

September 9, 2022,                     Respectfully submitted,

*[signature]*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Dr
El Paso, TX 79912
915-383-4604